**UNITED STATES of America,**
**Appellee,**

v.

**Raymond James HEPHNER, Appellant.**

**No. 16908.**

United States Court of Appeals
Seventh Circuit.

May 26, 1969.

Robert E. Henke, Appleton, Wis., for appellant.

Edmund A. Nix, U. S. Atty., John E. Clarke, Asst. U. S. Atty., W. D. of Wisconsin, Madison, Wis., for plaintiff-appellee.

Before CASTLE, Chief Judge, KNOCH, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CASTLE, Chief Judge.

Defendant, upon a jury verdict of guilty, was convicted of one count of bank robbery, in violation of 18 U.S.C. § 2113 (a),[1] and two counts of abduction in attempting to avoid apprehension for the crime charged, in violation of 18 U.S.C. § 2113(e). The district court denied motions for a new trial and for judgment of acquittal, and this appeal followed.

On March 31, 1965, a gunman wearing sunglasses and a bandage around his head, posing as a customer seeking financing for an automobile purchase, robbed the State Bank of Withee, Wisconsin of approximately $11,500. The robber escaped with two hostages whom he later abandoned unharmed. A few weeks later, defendant was arrested and charged with the crime. A preliminary examination was held before a United States Commissioner on May 3, 1965, where defendant was held to answer to the charge, and an arraignment was held before a district judge on June 1, 1965. Until August 14, 1967, the only charge pending against defendant was contained in a one-count information charging defendant with robbery of the bank.[2] At that date, the Government obtained from the Grand Jury the indictment under which defendant was tried and convicted.[3] Trial commenced on October 16, 1967.

Defendant's first contention on appeal is that he was denied his Sixth Amendment right to a speedy trial. However, since defendant did not request trial until July, 1967, he has no grounds to now complain of delay. "[T]he right to a speedy trial is the defendant's personal right and is deemed waived if not promptly asserted." United States v. Lustman, 258 F.2d 475, 478 (2d Cir. 1958), cert. den. 358 U.S. 880, 79 S.Ct.

1. § 2113 Bank robbery and incidental crimes.

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\* \* \* \* \*

(e) Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

2. Defendant had waived indictment on counts substantially similar to the first count of the present indictment.

3. At oral argument, it was suggested that an earlier indictment had been returned in July, 1967, which was amended by the August 14th indictment.

118, 3 L.Ed.2d 109. See also Mack v. United States, 326 F.2d 481, 487 (8th Cir. 1964); United States v. Dichiarinte, 385 F.2d 333, 335 (7th Cir. 1967); O'Brien v. United States, 25 F.2d 90 (7th Cir. 1928). Therefore, since the present action was brought against defendant within the five-year statute of limitations,[4] and since defendant did not demand that proceedings be commenced until more than two years after his arrest and arraignment, we hold that defendant was not purposefully or oppressively deprived of his right to a speedy trial. See United States v. Ewell, 383 U.S. 116, 120, 122, 86 S.Ct. 773, 15 L.Ed. 2d 627 (1966); Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957).

Defendant also contends that he was prejudiced by the Government's obtaining a three-count indictment, with its higher maximum penalties, rather than proceeding on the one-count information. This argument is coupled with the allegation of prejudicial delay, and likewise fails. Defendant does not question the Government's right to indict him for the additional offenses of abduction, but rather attacks the timing of the indictment as unfair.

██ We hold that although the indictment was obtained more than two years after defendant's arraignment, defendant has failed to demonstrate a prejudicial denial of his right to a speedy trial. Besides the fact that he failed to demand a trial until his motion to dismiss the above indictment, which had by then been returned, we find that the delay was neither purposefully caused by the Government,[5] nor oppressive to the defendant. See United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). Moreover, we see no greater threat to the rights of a defendant who is indicted for a greater offense than that originally charged than to one who is reindicted and retried after reversal of a prior conviction for the same crime. Such retrial is valid under both the Double Jeopardy Clause, United States v. Tateo, 377 U.S. 463, 473–474, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), United States v. Ball, 163 U.S. 662, 671–672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), and the Speedy Trial Clause, United States v. Ewell, *supra,* 383 U.S. at 121, 86 S.Ct. 773.

Defendant next contends that the district court erred in admitting testimony concerning the unexplained possession by defendant of a relatively large amount of cash. Both parties refer us to Gill v. United States, 285 F.2d 711, 713 (5th Cir. 1961), cert. den. 373 U.S. 944, 83 S.Ct. 1554, 10 L.Ed.2d 699, and Self v. United States, 249 F.2d 32, 35 (5th Cir. 1957), which stand for the proposition that "proof of the unexplained possession of unusual amounts of money after a robbery, standing alone, is not competent evidence to connect the possessor with the robbery; but it becomes competent provided it is further shown that he was impecunious prior thereto." See also Hardin v. United States, 324 F.2d 553, 554 (5th Cir. 1963); Haas v. United States, 344 F.2d 56, 63 (8th Cir. 1965), and cases cited therein.

██ In the instant case,[6] a Government witness testified that defendant's bank deposits had all been in small amounts until April 13, 1965, when defendant deposited $980 in twenty-dollar bills. Other testimony concerned an April 17, 1965 search, pursuant to a warrant, which uncovered $500 in twenty-dollar bills in defendant's mattress and $554, in cash, in defendant's wallet. Under the test enunciated in the *Gill* and *Self* cases, the evidence of defendant's possession of the money was admissible since the testimony regarding defendant's small bank account established his prior relative impecunity.

---

4. See 18 U.S.C. § 3282.

5. Among the factors contributing to the delay were various illnesses of defendant and of his counsel, and the absence of a district judge for the Western District of Wisconsin.

6. Defendant was a door-to-door fish salesman.

The fact that the amount of money discovered was a great deal less than that stolen and the fact that the deposit and search took place a month after the robbery do not render the evidence irrelevant or unprobative.[7] Rather, they are factors to be considered by the jury in weighing the evidence. We therefore find that the district court committed no error in its ruling on this matter.

Defendant next contends that the district court committed reversible error in failing to instruct the jury, upon request, that they should consider lack of evidence as well as the evidence presented. Defendant refers specifically to the fact that although no eyewitness stated that defendant wore gloves during the robbery, there was no evidence of fingerprints at the scene of the crime. Defendant argues that the instruction given—that "the jury must consider only the evidence properly admitted"—precluded the jury from considering this lack of identification evidence in reaching its verdict.[8]

■■ We conclude that although an instruction that lack of evidence can be considered might sometimes be useful, the decision to give it in a particular case should rest in the sound discretion of the trial judge. Such an instruction could easily lead to the type of unsupported speculation by the jury which courts seek to discourage. In most cases, the lack of the kind of evidence here referred to would be better left to trial counsel to point out during argument than to the court to mention in its instructions.

■ Defendant next alleges that the district court erred in failing to instruct the jury that defendant could have been found guilty of a lesser-included offense —larceny—rather than robbery. In order to require such an instruction, "the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater. A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." Sansone v. United States, 380 U.S. 343, 349, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965).

■ Under the above definition, "larceny" is not a lesser-included offense within the bank robbery charge under 18 U.S.C. § 2113(a), of which defendant was convicted. The statutory crime includes the taking or attempting to take any property "belonging to, or in the care, custody, control, management, or possession of, any bank," and the entering of any bank with the intent to commit any felony or larceny. Thus, larceny committed in a bank is on a par with robbery committed in a bank and subjects the perpetrator thereof to the same punishment.

This is not an instance of a "lesser-included offense" which would have entitled defendant to the jury instruction he sought, since the commission of either crime is made unlawful by the same statutory section and one is not "lesser" than the other. Therefore, the district court committed no error in refusing to give defendant's requested instruction.

Defendant next contends that the district court erred in submitting a copy of the indictment to the jury. Although the court thoroughly instructed the jury that the indictment was not evidence of guilt, defendant argues that a further instruction that evidence includes exhibits and the fact that the indictment was marked as an exhibit created a conflict in the instructions.

■ First, if the mere submission of the indictment to the jury was indeed

---

7. The court below did exclude testimony concerning additional discoveries of cash as being too remote or obtained through privileged communication.

8. Defense counsel submitted an affidavit stating that one of the jurors told him that the foreman stopped discussion of lack of evidence because of the above instruction.

error,[9] it was cured by the instruction: "The indictment is not evidence of defendant's guilt. It is merely the formal manner by which the government accuses a person of a crime. The jury must not be prejudiced against a defendant because an indictment has been returned against him." United States v. Grady, 185 F.2d 273 (7th Cir. 1950), relied on by defendant, reversed a conviction on the ground that an affidavit of a non-witness, accompanying the indictment, was improperly submitted to the jury since it deprived the defendant of his right to cross-examine the affiant. The *Grady* case is thus inapplicable to the case at bar.

Moreover, the above-quoted instruction regarding the non-evidentiary character of the indictment expressly precluded the jury from considering that document, however marked, as evidence. We therefore find defendant's allegation to be without merit.

Defendant further argues that the failure of the Court below to instruct the jury to disregard the prosecutor's comment, on rebuttal, that there was "unexplained" money in defendant's possession was reversible error [10] since this amounted to impermissible comment on defendant's failure to testify. Since the only other people who could have testified regarding the money allegedly were defendant's wife, who invoked the Fifth Amendment and refused to testify, and defendant's children, who were too young to take the stand, defendant argues that the comment irreparably prejudiced his case in that there was no one but himself who could possibly have explained the money to the jury.

■ We agree with defendant that it is improper to comment on a criminal defendant's exercise of his right not to testify. Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). However, the prosecutor's remark in the instant case was not a comment on defendant's failure to testify, but was instead a rebutting comment on the fact that no evidence was submitted by defendant to explain his possession of the money, which we have here held to be admissible evidence. Contrary to the *Chapman* and *Griffin* cases, there was no suggestion that guilt could be inferred from defendant's silence. Rather, the noteworthy fact was that an unusual amount of money was in the possession of a man who ordinarily did not possess such sums.

■ Upon defendant's objection to his comment, the prosecutor stated that his reason for mentioning that the possession of the money was "unexplained," was to rebut defense counsel's comments on the "explanation" of the money. In fact, defense counsel, in his closing argument, had gone into defendant's right not to testify at some length, and even offered some explanations of his own of why defendant had so much money in his possession.[11] Under these circumstances, the comment of the prosecutor, upon rebuttal, that defendant's possession of the money was "unexplained," was not reversible error. In a similar situation the Eighth Circuit stated:

"The direct reference to defendant's failure to testify with the accompanying explanation was an invitation to the prosecutor to comment upon the subject and does not demand reversal. United States v. Feinberg, 140 F.2d 592, 154 A.L.R. 272 (2nd Cir. 1944), cert. denied, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944); Baker v. United

---

9. In United States v. Nichols, 322 F.2d 681 (7th Cir. 1963), this court held submission of an indictment to the jury to constitute harmless error.

10. Defendant also alleges error in the court's refusal to grant defendant's motion for mistrial based on this ground.

11. Two explanations offered by counsel in his closing argument were that it was Lent and defendant's busy season in his fish business, and that defendant's wife might have been taking money from his pockets and hiding it in the mattress throughout their years of marriage.

States, 115 F.2d 533, 544 (8th Cir. 1940), cert. denied, 312 U.S. 692, 61 S. Ct. 711, 85 L.Ed. 1128 (1940); 8 Wigmore, Evidence § 2272 (McNaughton Rev. 1961); see Scanlon v. United States, 223 F.2d 382 (1st Cir. 1955); cf. United States v. Stromberg, 268 F.2d 256 (2nd Cir. 1959), cert. denied [Lessa v. United States], 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959)." Babb v. United States, 351 F.2d 863, 868 (8th Cir. 1965).

Moreover, the prosecutor's remark in the instant case was merely incidental,[12] did not refer to defendant's failure to testify, and was far from the "extensive argument asking the jury to overlook inferences favorable to petitioner because he invoked his constitutional right not to testify," which was condemned in Anderson v. Nelson, 390 U.S. 523, 525, 88 S.Ct. 1133, 1135, 20 L.Ed.2d 81 (1968). Thus, even if the comment was error, it was "harmless beyond a reasonable doubt." Chapman v. State of California, *supra*, 386 U.S. at 24, 87 S.Ct. 824.

Finally, defendant argues that the case must be reversed because the jury conducted an experiment in the jury room by having one juror cover his head and put on sunglasses, in a manner similar to that alluded to in testimony concerning the bank robber. This was allegedly done in an attempt to determine whether identification was possible of an individual so disguised.[13]

Defendant cites a number of cases holding that experiments by a jury which amount to receiving evidence which was not presented at trial vitiates the verdict. The Government cites a number of cases which declined to overturn verdicts on the basis of jury experiments of a nature similar to that in the instant case. On the record before us, we cannot say that the simple experiment alleged by defendant was prejudicial or affected the verdict. Jurors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdict. In a case, such as here, where there was ample positive identification, as well as circumstantial evidence, the verdict, which is fully supported by the evidence, will not be disturbed on such tenuous grounds.

We have considered the other issues raised by defendant [14] and find them to be without merit.

The Court expresses its appreciation to Robert E. Henke, a member of the Appleton, Wisconsin bar, for his excellent services as court appointed counsel for defendant.

The judgment of conviction is

Affirmed.

12. The entire remark by the prosecutor is as follows: "Now, then, before I go to the direct testimony in rebuttal, let me briefly mention the circumstantial evidence. It is around $1,900. It's $980 of unexplained $20 bills in the bank at Chilton. It's $500 of unexplained $20 bills under a mattress, and it's 500 and some dollars in bills in the billfold. They in themselves obviously aren't very significant, but when you have * * *

We have a considerable number of $20 bills. And as I said before, standing by itself, this type of circumstantial evidence probably would not justify a finding of guilt. But that is only part of the case, and don't let anybody confuse you on that issue.

The strongest part by far in this case is the positive identification of the various witnesses that have shared their knowledge with you."

13. This event was sworn to by defense counsel in an affidavit accompanying a motion for a new trial.

14. Those issues involve insufficiency of the evidence, the scope of pretrial voir dire examination of prospective jurors, and the scope of voir dire examination of identification witnesses regarding a lineup.