**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald A. BROADHEAD, Defendant-**
**Appellant.**

**No. 16770.**

United States Court of Appeals
Seventh Circuit.

July 15, 1969.

Bruce C. Hammerschmidt, Erle A. Kightlinger, Howard J. De Trude, Jr., Indianapolis, Ind., for defendant-appellant; Hammerschmidt, Bonewitz & Roberts, South Bend, Ind., Kightlinger, Young, Gray & Hudson, Indianapolis, Ind., of counsel.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., Richard L. Kieser, South Bend, Ind., for plaintiff-appellee.

Before KILEY, SWYGERT and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendant Donald A. Broadhead was indicted for the armed robbery of the McKinley Branch of the American Bank and Trust Co. in South Bend, Indiana (a federally insured bank) on June 13, 1967, in violation of 18 U.S.C. § 2113(d). The case was tried to a jury which found defendant guilty. Defendant appeals from the judgment of conviction and sentence against him alleging pre-trial and trial errors.

The evidence, as developed from the record, a pre-trial hearing on the propriety of a line up, and the trial, shows that at approximately 9:15 a.m., two men entered the bank. Both wore hats, sunglasses, sport coats and slacks and carried attache cases and were in the bank approximately ten minutes. Both men were armed with handguns and ordered the employees and customers in the bank to lie face-down on the floor. The man alleged to be Broadhead remained in the front of the bank while the second man, alleged to be William Carey Edwards, went into the back of the bank and obtained the available cash. During the robbery, Noel Knutson, the Assistant Branch Manager, was made to get up and answer a telephone call. While talking on the telephone, he was facing Broadhead for approximately one minute from a distance of about six feet. The robbers left the bank and fled through its parking lot.

At approximately 10:30 a.m., in Three Rivers, Michigan (only 46 miles from South Bend), a car, later found to be driven by Edwards in which Broadhead was a passenger, approached a road-block, reversed direction and sped away. After a lengthy chase, the car hit a pole and the occupants fled. Shortly thereafter, Broadhead was arrested by one policeman and Edwards by another. When arrested, Edwards was in possession of a handgun, which was later admitted into evidence.

Seven hours later, a lineup was conducted at which Broadhead was identified by Noel Knutson. At no time prior to the lineup was Broadhead brought before a magistrate. The lineup was conducted without the presence of counsel and no attempt to warn Broadhead of his rights at that time appears in the record. Later that day or the next day, a photograph of Broadhead, taken while he was in custody in Three Rivers, was printed in a South Bend newspaper. Testimony at trial showed that each of the witnesses making an in-court identification had seen the published photograph.

Three issues are presented on appeal. The first is whether the admission of Noel Knutson's identification testimony was improper because it was obtained as the result of a defective lineup. Secondly, is whether a statement in closing argument by the United States Attorney violated Broadhead's right not to testify by commenting on the failure of the defense to adduce evidence. Thirdly is whether the admission of Edwards' handgun was prejudicial error. Upon careful consideration of each of these issues and through application of the harmless error rule, we affirm.

## THE LINEUP AND IN-COURT IDENTIFICATION

The lineup challenged here occurred on June 13, 1967. On June 12, 1967, the Supreme Court rendered its decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. These cases held that a confrontation for the purpose of identifying a suspected criminal is a critical stage in the proceedings against him at which he has the right to counsel. A very limited exception may exist where the identifying witness is believed to be *in extremis* as in *Stovall*, 388 U.S. at 302, 87 S.Ct. 1967, and a violation of due process may

not be found. Generally, however, the *Wade* and *Gilbert* rules apply to "\* \* \* all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date." *Id.* at 296, 87 S.Ct. at 1969.

Thus, we are faced with the necessity of requiring compliance with a new rule within one day after its promulgation. The record clearly reflects that, even in this age of modern communication, the arresting police were not aware of the new rule. They acted under the premise that there was no requirement that counsel be presented at pre-trial confrontations for identification. In its decision to make the rule prospective only, the Supreme Court expressly recognized that this premise was so understood in "all 50 states" and that it was "not foreshadowed in our cases." *Id.* at 299, 87 S.Ct. 1967. While much may be said for allowing a few days grace for news of novel rules to reach those bound to respect and implement them, the Supreme Court has not seen fit to do so and we,

therefore, have not the freedom to do so here.

■ There is no doubt that the lineup in question was conducted without the presence of counsel for Broadhead and without any knowing waiver of his right to counsel. Therefore, it was conducted in violation of his Sixth Amendment right to counsel as enunciated in *Wade* and *Gilbert*.

■ The next question to be considered is whether Knutson's in-court identification testimony was, nevertheless, admissible. We hold that District Judge Grant held a proper pre-trial hearing and that his finding of an independent basis for Knutson's identification was supported by the evidence adduced at the hearing. Notwithstanding that the lineup was also violative of Fed.Rule Crim.Pro. 5[1], Knutson's in-court identification was proper.

The genesis of Rule 5 is mixed, depending upon early versions of the preliminary examination and constitutional concerns over voluntary confessions.[2]

---

1. Rule 5. Proceedings before the Commissioner

  (a) Appearance before the Commissioner. An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer empowered to commit persons charged with offenses against the laws of the United States. When a person arrested without a warrant is brought before a commissioner or other officer, a complaint shall be filed forthwith.

  (b) Statement by the Commissioner. The commissioner shall inform the defendant of the complaint against him and of any affidavit filed therewith, of his right to retain counsel, of his right to request the assignment of counsel if he is unable to obtain counsel, and of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The commissioner shall allow the defendant reasonable time and opportunity to consult counsel and

shall admit the defendant to bail as provided in those rules. [As amended Feb. 28, 1966, eff. July 1, 1966.]

  (c) Preliminary Examination. The defendant shall not be called upon to plead. If the defendant waives preliminary examination, the commissioner shall forthwith hold him to answer in the district court. If the defendant does not waive examination, the commissioner shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the commissioner that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the commissioner shall forthwith hold him to answer in the district court; otherwise the commissioner shall discharge him. The commissioner shall admit the defendant to bail as provided in these rules. After concluding the proceeding the commissioner shall transmit forthwith to the clerk of the district court all papers in the proceeding and any bail taken by him.

2. Both are well detailed in 1 Orfield, Criminal Procedure Under the Federal Rules §§ 5:1–5:40, esp. 5:5–5:14 (1966).

The use of such an examination before an impartial magistrate as a method of administering warnings as to rights, so as to make confessions voluntary, antedates recent concern in this area by at least two centuries. As long ago as 1897, the Supreme Court implicitly approved the practice in its discussion of English precedents dating from 1736. Bram v. United States, 168 U.S. 532, 545 et seq., 18 S.Ct. 183, 42 L.Ed. 568. The case also noted that statutes requiring such examinations to be conducted before justices of the peace could be traced back as early as 1 & 2 Ph. & M. ch. 13 (c. 1553). *Id.* at 549–50.[3]

During the period in which the Federal Rules of Criminal Procedure were being drafted (1941–44), there was great controversy over whether a rule like Rule 5 should be adopted.[4] The controversy stemmed, in part, from the question whether any rule was necessary in view of the Supreme Court's decision of March 1, 1943, in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.[5] *McNabb* relied on the Court's supervisory powers in fashioning an exclusionary rule for confessions taken from prisoners prior to their being brought before a magistrate under former 18 U.S.C. § 595. While the decision was limited to the problem before it, an improperly obtained confession, the Court used broad language to condemn the conduct of the officers who violated the statute in obtaining the evidence. The language involved was clearly broad enough to justify finding other types of evidence excludable under its rationale. The opinion held, 318 U.S. at 340–342, 63 S.Ct. at 613–14:

> In the view we take of the case, however, it becomes unnecessary to reach the Constitutional issue pressed upon us. For, while the power of this Court to undo convictions in state courts is limited to the enforcement of those "fundamental principles of liberty and justice", Hebert v. Louisiana, 272 U.S. 312, 316, [47 S.Ct. 103, 71 L. Ed. 270,] which are secured by the Fourteenth Amendment, the scope of our reviewing power over convictions brought here from the federal courts is not confined to ascertainment of Constitutional validity. *Judicial supervision of the administration of criminal justice in the federal courts implies the duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as "due process of law" and below which we reach what is really trial by force.* Moreover, review by this Court of state action expressing its notion of what will best further its own security in the administration of criminal justice demands appropriate respect for the deliberative judgment of a state in so basic an exercise of its jurisdiction. *Considerations of large policy in making the necessary accommodations in our federal system are wholly irrelevant to the formulation and application of proper standards for the enforcement of the federal criminal law in the federal courts.*
>
> The principles governing the admissibility of evidence in federal criminal trials have not been restricted, therefore, to those derived solely from the Constitution. In the exercise of its supervisory authority over the administration of criminal justice in the federal courts, see Nardone v. United

---

3. *Cf.* Hardy v. United States, 186 U.S. 224, 228–230, 22 S.Ct. 889, 46 L.Ed. 1137 (1902), in which a second confession was found admissible because an examination by a magistrate had been conducted pursuant to an early statute requiring it and during which
    "* * * the defendant was cautioned that he was under no obligations to make a statement: that it would be used against him if he made one, and that there was a proper time for him to make one if he so desired. * * *"
    *Id.* at 229–230, 22 S.Ct. at 891.

4. Orfield, *supra* note 2 at §§ 5:1–5:5.

5. Id. at § 5:3, p. 216 and nn. 8 and 9.

**1356**

States, 308 U.S. 338, 341–342, [60 S.Ct. 266, 267, 84 L.Ed. 307] this Court has, from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions.

\* \* \* \* \* \*

And in formulating such rules of evidence for federal criminal trials the Court has been guided by considerations of justice not limited to the strict canons of evidentiary relevance.

Quite apart from the Constitution, therefore, we are constrained to hold that the evidence elicited from the petitioners in the circumstances disclosed here must be excluded. For in their treatment of the petitioners the arresting officers assumed functions which Congress has explicitly denied them. They subjected the accused to the pressures of a procedure which is wholly incompatible with the vital but very restricted duties of the investigating and arresting officers of the Government and which tends to undermine the integrity of the criminal proceeding. Congress has explicitly commanded that "It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest United States commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial \* \* \*". 18 U.S.C. § 595. Similarly, the Act of June 18, 1934, c. 595, 48 Stat. 1008, 5 U.S.C. § 300a, authorizing officers of the Federal Bureau of Investigation to make arrests, requires that "the person arrested shall be immediately taken before a committing officer." Compare also the Act of March 1, 1879, c. 125, 20 Stat. 327, 341, 18 U.S.C. § 593, which provides that when arrests are made of persons in the act of operating an illicit distillery, the arrested persons shall be taken forthwith before some judicial officer residing in the county where the arrests were made, or if none, in the county nearest to the place of arrest. Similar legislation, requiring that arrested persons be promptly taken before a committing authority, appears on the statute books of nearly all the states. [Emphasis added, citations and notes omitted.]

Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100 (1948) (after Rule 5 was substituted for 18 U.S.C. § 595 relied on in *McNabb*) held similarly and excluded a confession obtained as a fruit of the illegal detention, but without the extended interrogation present in *McNabb*. In Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Court again adhered to Rule 5(a) and *McNabb* and *Upshaw*, making clear that those cases were to be read as part and parcel of the Rule. The opinion also emphasized Rules 5(b) and (c) noting the importance of the warning of rights of the arrestee and the determination as to whether there was probable cause to detain him. *Id.* at 453–455, 77 S.Ct. 1356.

In Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court extended the Sixth Amendment right to counsel to cover post-arrest pre-arraignment situations and promulgated detailed rules as to the warnings of rights to be given to all arrestees. Shortly after *Miranda*, Rule 5(b) was amended to require a warning to be given to the arrestee "of his right to request the assignment of counsel if he is unable to obtain counsel."[6] This requirement is also contained in 18 U.S.C. § 3006A(b) (1964, 1969) together with a grant of the power to appoint counsel.

■ In view of the history set out above and the fact that *Wade's* decisional basis was the right to counsel, we agree with appellant that the application of *McNabb*, *Mallory* and Rule 5 to the situation at hand is proper. The re-

---

6. For a discussion of this amendment, see 1 Orfield, *supra* note 2 at §§ 5:84–5:85 (1966, Supp. 1968).

quirement of counsel's presence at line-ups is best implemented by Rule 5's requirement that the arrestee promptly be taken before a magistrate and told of his right to counsel. It is at this same appearance before a magistrate that 18 U.S.C. § 3006A(b) requires the assignment of counsel who can then safeguard his client's rights at any later lineup.

In so holding, we choose to follow the reasoning in Adams v. United States, 130 U.S.App.D.C. 203, 399 F.2d 574 (1968), except for its discussion of "divisible detentions," which question is not presented on the facts before us. We agree with the statement in *Adams* which reflects our understanding of the policy behind *McNabb, Mallory* and Rule 5. *Adams* held, 399 F.2d at 577–578:

On the precise facts shown by this record, we think the effect of Rule 5(a) is to convert, at least as of 4:00 P.M. on the afternoon of appellants' arrest, their continued detention at the police station into an unlawful arrest without probable cause in respect of the crime for which they were convicted. *It is not, thus, the precise scope of the Mallory exclusionary rule which is determinative here but, rather, the sweep of the general policy of excluding evidence gathered during a period of detention following upon an unlawful arrest.*[5] The applicable case

5. In *Mallory* only the admissibility of a confession was in issue, and what the Supreme Court said about exclusion can be read solely with reference to that fact. But the policy of using an exclusionary rule as a deterrent to improper police conduct goes back to McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L. Ed. 819 (1942). Between *McNabb* and *Mallory*, but after the advent of Rule 5 (a), the Second Circuit held that the Supreme Court's exclusionary rule applied not alone to confessions but to "*all evidence obtained by federal agents through access to persons while detained in violation of Rule 5(a)."* United States v.

7. In *Palmieri*, after argument, the grant of certiorari was dismissed, 393 U.S. 218, 89 S.Ct. 440, 21 L.Ed.2d 389 (1968). It raised the question of the applicability of *McNabb* and *Mallory* to the states

Klapholz, 2 Cir., 230 F.2d 494, 498, cert. denied, 351 U.S. 924, 76 S.Ct. 781, 100 L. Ed. 1454 (1956). Although, as indicated in the text, we do not find it necessary to address ourselves here to the relationship of the *Mallory* exclusionary rule to non-testimonial evidence, we note that a like question, in a case involving unnecessary delay in presentment in violation of a state statute, appears to be involved in a recent grant of certiorari by the Supreme Court. Palmieri v. Florida, cert. granted, 392 U.S. 920, 88 S.Ct. 2287, 20 L.Ed.2d 1382 (U.S. May 28, 1968) [Emphasis added] [7]

among our precedents is Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1959), in which this court held that fingerprints taken from one illegally arrested must be excluded, and where it espoused the principle that *anything* of evidentiary value produced by such detention is proscribed. Speaking for the court, Judge Hastie said (at p. 467 of 262 F.2d):

In these situations it is deemed a matter of overriding concern that effective sanctions be imposed against illegal arrest and detention and the risks of overreaching inherent in such action. Even though highly probative and seemingly trustworthy evidence is excluded in the process, this loss is thought to be more than counterbalanced by the salutary effect of a forthright and comprehensive rule that illegal detention shall yield the prosecution no evidentiary advantage in building a case against the accused. All of this is bottomed on the Constitution itself. The Fourth Amendment makes protection of the individual against illegal seizure or arrest a constitutional imperative.

As for the relationship between Rule 5 and *Wade*, we adopt as our own the reasoning of then Circuit Judge Burger (now CHIEF JUSTICE) in his concurring

through constitutional reasoning. See the summary of argument at 37 U.S.L. Week 3189. This issue is not before us and we intimate no opinion on it.

opinion in *Adams*. He stated, 399 F.2d at 580:

It is clear that opinions of this court dealing with the *Mallory* rule did not apply it in the lineup situation. See Copeland v. United States, 120 U.S.App.D.C. 5, 343 F.2d 287 (1964); Fredricksen v. United States, 105 U.S.App.D.C. 262, 266 F.2d 463 (1959). But I do not agree that these cases are inapplicable here because there is a "secondary detention." The reason our earlier holdings do not apply is that the Supreme Court's decision in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), has made the underlying rationale of those cases irrelevant. As my concurring opinion in Williams v. United States, 120 U.S.App.D.C. 244, 247, 345 F.2d 733, 736 (1965), indicated, the reason for not applying *Mallory* to a lineup identification was that a lineup in the absence of counsel before *Wade* was a perfectly legitimate procedure, *see* Copeland v. United States, *supra*, and that *Mallory* was concerned with improper "interrogation." It was natural for the cases following *Mallory* to concentrate on the exclusion of utterances, but not other forms of evidence. But *Wade* has changed this. Now that the right to counsel is an integral part of the lineup procedure, the warnings that are given at presentment and the opportunity to have counsel appointed are highly relevant to the lineup situation. *See* Fed.R. Crim.P. 5(b); 18 U. S.C. § 3006A(b) (1964). Since the *Mallory* rule was a response to the protections afforded by prompt presentment, it is appropriately applied to the line-up situation in the wake of *Wade*.

■ Our holding does not imply that Rule 5 applies to states simply because the arrest here was executed by local police in Michigan. On the contrary, the Rule is only Federal in nature. It is applicable in this case because the road-block and arrest were performed at the behest of the FBI and the lineup was conducted by FBI agents who merely used the Three Rivers jail as a temporary local detention site. Thus, we have before us a situation in which the local authorities had no ground for setting up a roadblock and making the arrest. They did so only at the request of Federal forces and their custody of Broadhead was nominal, at best. This was a co-operative situation virtually indistinguishable from that in Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943). In *Anderson*, the Court applied *McNabb* to hold inadmissible confessions obtained while prisoners were in nominal Tennessee custody but were, in fact, Federal prisoners. The Court held, 318 U.S. at 356, 63 S.Ct. at 602:

Unaided by relatives, friends, or counsel, the men were unlawfully held, some for days, and subjected to long questioning in the hostile atmosphere of a small company-dominated mining town. The men were not arrested by the federal officers until April 30th, and only then were they arraigned before a United States commissioner, except for Ballew who was not arraigned until May 2nd or 3rd. *There was a working arrangement between the federal officers and the sheriff of Polk County which made possible the abuses revealed by this record. Therefore, the fact that the federal officers themselves were not formally guilty of illegal conduct does not affect the admissibility of the evidence which they secured improperly through collaboration with state officers.* Gambino v. United States, 275 U.S. 310, 314, [48 S.Ct. 137, 72 L.Ed. 293;] Byars v. United States, 273 U.S. 28, 33–34, [47 S.Ct. 248, 71 L.Ed. 520] [Emphasis added.]

See also, *e.g.*, United States v. Harris, 211 F.2d 656, 660 (7th Cir. 1954) (dic-

tum). Our earlier decisions in United States v. Hilbrich, 341 F.2d 555, 558–559 (7th Cir. 1965), cert. denied, 381 U.S. 941, 85 S.Ct. 1775, 14 L.Ed.2d 704, and United States v. Moriarty, 375 F.2d 901, 904 n. 5 (7th Cir. 1967), cert. denied, 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350, are distinguishable on their facts. In neither case did this Court find there was a "working arrangement" of the type present here and in *Anderson*. Also, in both cases the prisoner was in custody due to a state crime and was not merely arrested and held by local police at the request of Federal authorities. Thus, our decision is in accord with many other cases holding that Rule 5 is applicable only to Federal arrests and detentions or those in which a "working arrangement" is clearly shown.[8]

■■ The court below, faced with a lineup which was defective both under *Wade* and *Gilbert* and under Rule 5, acted properly in deciding to hold a pre-trial hearing as to whether Knutson had an independent basis for making an in-court identification of Broadhead. Judge Grant's conduct of the hearing of October 26, 1967, not anticipated, but bettered, the guidelines set down by the District of Columbia Circuit in its *en banc* decision in Clemons v. United States, 408 F.2d 1230 (D.C. Cir. 1968). This instructive opinion held, *id.* at 1237:

> In the conduct of trials involving post-*Wade* and *Gilbert* identifications, the mode of proceeding would seem to be as follows: Whenever the prosecution proposes to make eyewitness identification a part of its case, the defense is entitled to know, through disclosure by the prosecution or by evidentiary hearing outside the presence of the jury, the circumstances of any pre-trial identification.[4] If it was one

4. Since *Stovall*, the District Court has amended its rules to provide that pre-trial objections to eyewitness testimony are to be heard and disposed of by the judge

before whom the case is to be tried, and the current practice is for that judge normally to hear evidence and to rule on such objections before the jury is summoned.

where the court finds that the Sixth Amendment right to counsel existed but was not observed, the prosecution may not, under the *per se* exclusionary rule enunciated by the Supreme Court in *Gilbert*, offer such identification as part of its case; and the same rule would appear to be applicable with respect to prosecution evidence of post-*Stovall* pre-trial identifications found by the court to be violative of due process.

Where the prosecution intends to offer only an in-court identification, the defense may challenge its admissibility. The court should then, on facts elicited outside the presence of the jury, rule upon whether a pre-trial identification by the same eyewitness is violative of due process or the right to counsel. If a violation is found, the court should then decide whether the in-court identification is still admissible because it has an idependent source; indeed, it would appear in the interest of expeditious judicial administration for such a ruling to be made in any event. If the judge regards only the in-court identification as admissible, in the trial to the jury thereafter, the defense may, as a matter of trial tactics, decide to bring out the pre-trial confrontation itself, hoping that it can thus detract from the weight the jury might otherwise accord the in-court identification.

He correctly perceived that there was no distinction between the *Wade* taint and the taint of a Rule 5 violation. Each requires only that in-court identifications have an independent basis free from the tainted lineup and that the prosecution is not permitted to introduce any evidence as to the lineup, except in response to evidence adduced or testimony elicited by the defense. Cf. Adams v. United

8. See 1 Orfield, *supra* note 2 at § 5:53 at 288, nn. 3 and 4 and § 5:63 at 302, n. 6 (1966, Supp. 1968).

States, *supra,* and Clemons v. United States, *supra.*

At the pre-trial hearing, the court was faced with other dilemmas. Firstly, it had to balance Broadhead's right to be present at the hearing with the necessity of prohibiting Knutson from seeing him. Had Knutson seen Broadhead at the hearing, it may have had the effect of precluding him from making an in-court identification of the defendant at the trial. Judge Grant carefully resolved this problem by having Broadhead seated in the courtroom on one side of the bench when the hearing began. Knutson was then brought in from the rear and seated on the other side of the bench in a manner that neither saw each other during the hearing, but both could be seen by everyone else in the room. Secondly, as an additional precaution, the hearing was held in private. The only parties present before the Court were counsel, defendant, the witness, a court reporter, a clerk, two FBI agents and a marshal. The public was excluded. Thirdly, the notes of the hearing were sealed until requested by defense counsel for use during the trial. Lastly, defense counsel was afforded the widest possible latitude on cross-examination. We commend Judge Grant for the method in which he conducted this hearing and the ingenuity he employed when faced with novel problems which he readily and correctly overcame.

■ Knutson's testimony at the hearing went into detail as to the extent to which he had an opportunity to see Broadhead during the robbery. He testified that Broadhead made him stand up and answer a telephone call during which time Knutson was facing him from a distance of six feet or less for approximately one minute or one and one-half minutes. Knutson also explained how, while lying down, he kept his head to one side looking at Broadhead so as to try to fix his features in his memory. His statement that he was somewhat distracted during the telephone conversation by the gun in Broadhead's hand and, while looking at the gun, did not concentrate on his face, is a fact which must be weighed against his resulting description. His description of Broadhead was reasonably accurate and least subject to the conflicts which arose between the other witnesses who did not attend the lineup. Knutson's testimony that he was able to identify the defendant at the lineup by virtue of his high cheekbones, the shape of his nose, his height and his build was not challenged by the defense. The only discrepancy seized on by the defense was his description of Broadhead's hair. Knutson stated it was lighter at the lineup than he thought it was, but explained the difference by noting that, at the lineup, lights were placed behind those to be viewed and it probably made Broadhead's hair appear lighter than it would have appeared in the bank. He also candidly admitted that the newspaper photograph shocked him. However, the photograph was taken of Broadhead seated inside a car with no light on him and his features were distorted by pain and some blood resulting from the collision which ended the chase. The defense cross-examined very closely and elicited a partial description of the lineup.[9] Given the detailed identification testimony and the trial court's better ability to weigh the credibility of the live witness (rather than the cold record before us), we hold that the factual determination by the court that there was an independent basis for an in-court identification was supported by sufficient evidence in the record.[10] Accordingly, we

---

9. That a fuller description of the lineup and the other participants in it was not elicited, is unfortunate. However, this was due to the failure of the defense to pursue the matter and cannot be blamed on the Government or the court.

10. We appreciate also that neither the court below nor this Court have a sufficient description of the lineup. This problem could be easily resolved in future cases. See, *e. g.,* Patton v. United States, 403 F.2d 923, 926 (D.C. Cir.

find no error in permitting Knutson to make an in-court identification. Nor was there any error in his testifying before the jury as to the lineup as he did not do so on direct examination by the Government but only after the defense rasied it on cross-examination.

■ The only other testimonial defect asserted by appellant was that all of the six witnesses who made in-court identifications of him had seen the photograph of him which appeared in the local newspaper and that this tainted their identification of him. We do not believe this point was really raised below or preserved for our consideration. Assuming, *arguendo*, that it was, we find no error. The untainted descriptions given by the witnesses suffered from the ordinary diversity of observation and fallibility of memory which is common in such situations.[11] These descriptions contained about the same proportions of agreements and inconsistencies as may be expected in such a situation. The extent to which the photograph aided any identification was carefully brought out in cross-examination. While we view its publication as most unfortunate, we can only counsel self-restraint by the media in future similar situations. The matter, as posed at trial, was one of the weight to be given to the testimony. As such, it was a matter for the jury and they have decided it.

## PROSECUTOR'S COMMENT

■ ■ Appellant asserts as plain error under Federal Rule of Criminal Procedure 52(b), a remark by the prosecutor in closing argument which assertedly implied that defendant did not testify.[12] We adhere to the Supreme Court's decisions in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), which hold that comments by the prosecution on a defendant's failure to testify or adduce evidence are a violation of every person's Fifth Amendment right not to be compelled to be a witness against himself. Every defendant has a right not to testify but to simply put the prosecution to its proof and the prosecutor may not comment on the use of this right. It does not matter whether there is only one comment (as in *Griffin*) or thirty-four comments which permeate the whole of a closing argument (as in *Chapman*). While we adhere to these cases, we find them inapplicable to the particular facts before us.

■ The crucial fact before us is that the prosecutor's comments were largely incidental, were but a moment in a long opinion final argument, and were a fair response to a situation caused by the defense. Defense counsel, in his opening statement to the jury, said:

Now, it is at this time, we think the evidence will show, that Edwards and Broadhead parted company, and that the Government—*that the evidence will further show that at the time of this alleged bank robbery, if indeed there were two men, that the Government will not, and evidence will wholly fail to show, that this young man, Donald A. Broadhead, was present at that alleged bank robbery; that they*

1968), where the court suggested that color photographs be taken which could demonstrate fairly the physical characteristics of the participants. See also Comment, Right to Counsel at Police Identification Proceedings, 29 U.Pitt.L. Rev. 65 (1967), which describes the commendable practices adopted by the Pittsburgh Police Department both to ensure fairness and to accommodate defense counsel at lineups.

11. While appellant argues that other witnesses besides Knutson may have been at the lineup, this point was not raised below. Even so, there was uncontradicted testimony that Knutson was the only one at the lineup. Accordingly, we view the other identification testimony as *untainted*.

12. This point is asserted under Rule 52(b) due to the failure of defense counsel to object at the time the remark was made. It is properly raised before us.

*had parted—the evidence will show that they had parted company; that there was someone else involved.*

We feel certain, and we think the evidence will show, and as the Court has instructed you on this—the preliminary occasion, and he will again before this case is over, and even before the evidence is adduced to you, that this defendant, Donald A. Broadhead, has the benefit of the presumption of innocence throughout this whole case, and we say. to you, Ladies and Gentlemen of the Jury, that not only will this presumption of innocence, as you listen to the evidence, will prevail, not only during the time that you have the evidence, but thereafter, and as you get into the jury room, *the evidence will show, and the Government will wholly fail to show that Donald A. Broadhead was actually involved in this bank robbery; that he had parted company and that he was in fact not there.*

For those reasons, we feel that the evidence will show him to be innocent throughout the whole term of this jury case. [Emphasis added.]

It was the theory of the defense during the trial that some unidentified third person was Edwards' accomplice at the robbery, Edwards and Broadhead having parted company before the robbery.[13]

Suffice it to say that the defense offered no witnesses in support of its theory nor adduced any evidence, by cross-examination or otherwise, to sustain its view. Thus the jury had before it only defense counsel's assertion. In response to this assertion, the prosecution stated at the beginning of its opening final argument:

I should like to comment on some of the evidence rather briefly that has

been adduced at this trial the last two days.

I should like to comment first that the only witness—the only evidence that is before you that evidence which has come from the testimony of the witnesses which the Government has brought to the stand, and the few exhibits which have been introduced into evidence in connection with the testimony of those witnesses.

The defendant has offered no evidence except from the cross-examination of the Government's witnesses.

\* \* \* \* \* \*

I would also like to point out a variance between the opening statement of defendant's Counsel and the proof— the evidence that was adduced at trial.

There was a statement made in Counsel's opening that Donald Broadhead—it would be shown that Donald Broadhead was not the man who held up the McKinley Branch of the American Bank on June 13, 1967; that it was another man; and that it would be so shown.

There was no evidence of this other man.

In United States v. Hephner, 410 F.2d 930 (7th Cir. May 26, 1969), this Court decided a highly analogous case. *Hephner* was a bank robbery case in which the defendant was arrested with large amounts of money in his possession. No evidence was introduced at trial which would explain the possession of the money in a manner consistent with innocence. During final argument, defense counsel offered two explanations. The prosecution responded that no evidence was submitted by the defendant which would explain his possession of the money. It was held, 410 F.2d at 935:

Upon defendant's objection to his comment, the prosecutor stated that

---

13. In this regard it is worth noting that defense counsel never attempted to carry this theory through to what happened after the robbery. Because of this, we are at a loss to know how his theory explained the subsequent arrest of Broadhead in Edwards' company in Three Rivers.

his reason for mentioning that the possession of the money was "unexplained," was to rebut defense counsel's comments on the "explanation" of the money. In fact, defense counsel, in his closing argument, had gone into defendant's right not to testify at some length, and even offered some explanations of his own of why defendant had so much money in his possession.[11] Under these circum-

11. Two explanations offered by counsel in his closing argument were that it was Lent and defendant's busy season in his fish business, and that defendant's wife might have been taking money from his pockets and hiding it in the mattress throughout their years of marriage.

stances, the comment of the prosecutor, upon rebuttal, that defendant's possession of the money was "unexplained," was not reversible error. In a similar situation the Eighth Circuit stated:

"The direct reference to defendant's failure to testify with the accompanying explanation was an invitation to the prosecutor to comment upon the subject and does not demand reversal. United States v. Feinberg, 140 F.2d 592, 154 A.L.R. 272 (2nd Cir. 1944), cert. denied, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944); Baker v. United States, 115 F.2d 533, 544 (8th Cir. 1940), cert. denied, 312 U.S. 692, 61 S.Ct. 711, 85 L.Ed. 1128 (1940); 8 Wigmore, Evidence § 2272 (McNaughton Rev. 1961); see Scanlon v. United States, 223 F.2d 382 (1st Cir. 1955); cf. United States v.

Stromberg, 268 F.2d 256 (2nd Cir. 1959), cert. denied, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959)." Babb v. United States, 351 F.2d 863, 868 (8th Cir. 1965).

It is clear that *Hephner* is applicable to the facts before us. We hold that defense counsel's opening statement was an invitation to the prosecution to comment on the defense theory and was, therefore, not error. In support of our decision, we also note that the defense did not abandon its theory until after the prosecutor's remark.[14]

## ADMISSION OF THE HANDGUN INTO EVIDENCE

Appellant contends that it was prejudicial error to admit into evidence a handgun seized from Edwards' person in Three Rivers. He argues that the gun was not shown to be connected to Broadhead and that the image created in the jury's minds when Edwards was called to testify and remained silent was prejudicial to defendant. We reject these contentions.

Officer Gunter, of the Three Rivers Police, testified that he and other officers chased a car carrying two men, that the car finally stopped, that two men got out and ran in different directions, that he pursued the one later identified as Edwards and captured him and took the gun from his person. Officer Roberts testified that he was also involved in the car chase, that he saw the man later identified as

14. In his closing argument, defense counsel finally abandoned the theory:

Now, I would like to recall to you what the Court told you when we started out here. The Court instructed you that the defendant in this case, Donald Broadhead, is clothed with a presumption of innocence. He doesn't have to prove anything; the burden is upon the Government of the United States to prove beyond a reasonable doubt that this boy committed this particular offense.

Now, Mr. Kieser very graciously pointed out to you some of the things

that he thought he was going to prove, and then it turned out that he didn't prove it, so I won't go into those things.

He stated, however, that we didn't prove it with someone else; we don't have to prove it was someone else.

Mr. Kieser has to prove it was Donald Broadhead.

We further note that the trial court carefully instructed the jury on Broadhead's right not to testify, that they were not to draw any inference from his silence, and on the presumption of innocence.

Broadhead run from the car and that he chased him and subsequently captured him. Sheriff Balk testified that he looked into the stopped car through its windows and saw a revolver, bundles of money lying loose and a black briefcase.[15] Officer Gunter also testified that he took a brown satchel from Edwards, when he arrested him, which contained bundles of money. The witnesses to the bank robbery testified that both robbers carried satchels, that some of the money taken was bundled, and that both robbers were armed with pistols or revolvers. These same witnesses were the ones who identified Broadhead as being one of the robbers. Under the circumstances, we hold that the connection between Broadhead and the gun was clearly established and, therefore, it was not error to admit it into evidence.

Assuming, *arguendo*, that it was error, we hold it to be harmless error. The mass of evidence including the detailed testimony of the witnesses at the bank and the police officers in Three Rivers is, in our view, sufficient to show Broadhead's guilt beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (June 2, 1969); Chapman v. California. 386 U.S. 18, 22–26, 87 S.Ct. 824, 17 L. Ed.2d 705 (1964); United States v. Satterfield, 410 F.2d 1351, 1354 (7th Cir., May 23, 1969); United States v. Lipowitz, 401 F.2d 591, 593 (3d Cir. 1968).

For all of the foregoing reasons, the conviction is affirmed.

Affirmed.

15. While this evidence was seized, the trial court correctly ruled it inadmissible under Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), because the seizure took place a significant time after both defendants were in custody and had been removed from the scene. See Landau, Freedom of the Road: Public Safety v. Private Right,

14 De Paul L.Rev. 381, 389–94 (1965). However, this in no way impairs the sheriff's testimony of what he could see and the testimony was correctly admitted under the plain view doctrine. Landau, id. at 395, nn. 92 and 93.