**UNITED STATES of America**

v.

**Herman Olin WELCH.**

**Crim. No. 73-214.**

United States District Court,
D. South Carolina,
Florence Division.

July 25, 1973.

John K. Grisso, U. S. Atty., Columbia, S. C.; Marvin L. Smith, and Jack L. Marshall, Asst. U. S. Attys., for the Government.

E. Leroy Nettles, Lake City, S. C., and Thomas E. Smith, Jr., Pamplico, S. C., for defendant.

## ORDER

MARTIN, Chief Judge.

This matter is before the Court upon motion of Herman Olin Welch for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Movant was indicted for violation of certain sections of the bank robbery statute, 18 U.S.C.A. § 2113. Specifically, he was charged with robbing the Irby Street Branch of the Guaranty Bank and Trust Company in Florence, South Carolina, on January 17, 1973 [2113(a)], while using a dangerous weapon [2113(d)] and thereafter abducting a bank employee to aid in his escape [2113(e)]. Movant pled not guilty to the charges and went to trial represented by retained counsel. On June 6, 1973, the jury returned a verdict finding movant guilty of the charges.

Following the conviction, timely motion for a new trial was filed alleging that an improper and prejudicial experiment was conducted by the jury during their deliberations. This resulted in an evidentiary hearing which was held by this Court in Columbia, South Carolina.

The alleged experiment concerns introduction and use of a roll of adhesive tape in the jury room during deliberations.[1] Testimony at the evidentiary hearing confirms that the tape was purchased and brought into the jury room by one of the jurors. The same testimony further reveals that the tape was put to use during deliberations. This Court must now decide (1) whether this was, in fact, an improper jury room experiment and (2) if it was an improper experiment, did it result in the type of error which warrants a new trial.

The significance of the adhesive tape in this case is two-fold. First and most obvious is the matter of identity. Welch was identified by certain witnesses at a lineup and at the trial. Use of tape as a partial disguise could have some bearing on this identity. Also, the unusual nature of the alibi in this case renders the tape's adhesive qualities a further significant factor. According to the defendant, he was in a doctor's office for treatment shortly after the robbery occurred. Witnesses from the doctor's office did testify that Welch was in the office shortly after the bank was robbed. They stated on examination that they did not observe any tape gum or residue on the defendant's face. The defense strongly urged that residue would necessarily be present due to the shortness of time.

Time was a key element in the case due to defendant's alibi. According to government testimony, the robbery began in the vicinity of 9:05 A.M. and definitely before 9:10 A.M. when the alarm sounded in the Florence police station. Testimony places the robber out of the bank not later than 9:16 A.M.

To aid in his escape, the robber forced a bank employee, Mrs. Crouch, to accompany him and drive him away in her car. Upon reaching the outskirts of town, the robber abandoned Mrs. Crouch and drove away. The automobile was later found near the downtown area in the parking lot of the Flamingo restaurant.

Testimony of the defense placed Welch in the doctor's office within five minutes of 9:30 A.M. Government evidence indicated that Welch could have arrived several minutes after 9:30 A.M. The government also presented an F.B.I. agent who testified that it was possible to have robbed the bank, driven to the point where Mrs. Crouch was released, returned to the Flamingo restaurant, exchanged cars, and driven to the doctor's office by 9:30 that morning. Be that as it may, it is obvious that only a brief period elapsed between the bank robbery and defendant's arrival in Dr. Baroody's office. Thus, it is seen that time was a critical factor.

In his motion for a new trial, Welch argues that the jury was obviously concerned with the presence or absence of tape residue on his face. It is true that this was brought out at trial. In fact, the government in its closing argument asserted that residue from the tape would not necessarily exist. However, no tape or expert testimony concerning tape was introduced at the trial.

■ Initial inquiry by this Court must begin with the recognition that only legal evidence can be considered by the jury. Cases abound which hold that unauthorized experiments and consideration of matters not in evidence by a jury are improper.

The evidentiary hearing which was held by this Court consisted of testimony of five (5) jurors. All five witnesses confirmed the introduction of the tape into the jury room. This testimony also reveals that one of the jurors, a female, placed a strip of the tape across her upper lip. The time the tape remained on her face was in conflict and ranged from five (5) to thirty (30) minutes. All the witnesses testified that they saw the tape on the juror's face.

---

1. Evidence in the government's case revealed that hair and facial features of the robber were partially camouflaged. A ski cap was pulled down over the hair to the vicinity of the eyebrows and adhesive tape covered a portion of the robber's lower face.

Some testimony indicated that comments were made concerning the tape.[2]

■■■■ Obviously, application of the tape amounts to an improper experiment by at least some of the jurors. Movant urges the Court that the improper use of the tape requires a new trial, citing United States v. Beach, 296 F.2d 153 (4th Cir. 1961). The Government argues that a new trial is not necessary, citing United States v. Hephner, 410 F. 2d 930 (7th Cir. 1969).

There is no question that use of the tape was improper. The point is, must a new trial be granted or can this be considered a case of harmless error?

The harmless error rule was enunciated by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In formulating the rule, the Court said:

> We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction. 386 U.S. at 22.

The Court then went on to hold "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24.

In this Court's view, the *Chapman* rule applies. The next inquiry is whether the error is harmless beyond a reasonable doubt. If so, a new trial is not required and the motion must be dismissed. Whether the error is harmless hinges upon the evidence and the nature of the error. Clearly, error which may necessitate a new trial in a very close case may be considered harmless where the evidence is overwhelming. Review of the evidence in this case leads the Court to conclude that the error is harmless and a new trial is not required.

The case against Welch was overwhelming. Direct and circumstantial evidence implicated him as the robber. Analysis of the evidence reveals three positive identifications by employees of the bank. A fourth employee, Mrs. Crouch, picked two men from the lineup as possibly being the man. One of these two men was the defendant Welch.

In addition to identification, ample evidence implicates the defendant. Among this evidence is testimony disclosing that Welch made a·payment on a finance company loan in which he passed two $20 bait money bills two weeks after the robbery. Conflicting statements concerning these bills were given the F.B.I. Welch was seen in the Flamingo restaurant on the morning of the robbery. The waitress testified that it was around 7:30. Mrs. Crouch's automobile (the getaway car) was located in the parking lot of the Flamingo restaurant. Bank employees testified that the robber appeared sick. Defendant presented evidence that he was sick that day and even went to Dr. Baroody for treatment. Defendant has distinctively colored hair. The robber's hair was carefully covered by a ski cap. Defendant told the F.B.I. that he had been in the bank several weeks earlier to cash a $100 bill. His own bank is less than a block away. In his statement to the F.B.I., defendant indicated that he had spent considerable time in the vicinity of the bank and along part of the getaway route on the morning of the robbery. The robber mentioned the town of Lake City to Mrs. Crouch. It appears from government evidence that Welch is originally from Lake City and has relatives living there.

Further, evidence supports the fact that Welch was deeply in debt at the time of the robbery. Evidence revealed that on the day of the robbery and within a few days thereafter, defendant made payments on numerous debts. One debt, paid on the day of the robbery, was for $600. In explaining these actions to the

---

**2.** Although comments were made, no general discussion ensued. All five witnesses testified that they participated in no discussion concerning the tape.

F.B.I., defendant stated that an unidentified gambler paid him $2100 in cash on January 13, four days prior to the bank robbery.

Even the defendant's alibi, if believed, is open to question. It does not necessarily raise an either-or situation. If the government's theory on timing is believed, Welch could have robbed the bank and still been in Dr. Baroody's office during the time alleged.

The Court has carefully read the Fourth Circuit's opinion in the *Beach* case, *supra,* and finds no language which would demand a new trial in this case. Factually, the cases are different. In addition, although the introduction of the drop cord by the trial Court upon the jury's request was found to be error requiring a new trial, the Court did not say that improper evidence in the jury room can never be harmless error.[3]

In the *Hephner* case, *supra,* an experiment was conducted by the jury which closely resembles the one before the Court. *Hephner* was a bank robbery case. During deliberations, a juror covered his head and put on sunglasses in a manner similar to that described as having been worn by the robber. The experiment was conducted to see if identification of a person so disguised was possible. In affirming the conviction, the Court said:

> On the record before us, we cannot say that the simple experiment alleged by defendant was prejudicial or affected the verdict. Jurors must be given enough latitude in their deliberations to permit them to use common experiences and illustrations in reaching their verdict. In a case, such as here, where there was ample positive identification, as well as circumstantial evidence, the verdict, which is fully supported by the evidence, will not be disturbed on such tenuous grounds. 410 F.2d at 936.

Movant contends that the Seventh Circuit did not even find error in the ex-

periment performed in *Hephner*. Assuming that movant is correct, this Court would not go so far in this case. Introduction and use of the adhesive tape in the jury room was error. However, considering the evidence and the nature of the experiment, this Court is convinced beyond a reasonable doubt that the error performed was harmless. Accordingly,

It is ordered that the motion for a new trial is denied. Let copies of this order be served on the parties.

---

3. The Court also observes that the Beach case preceded United States v. Chapman, *supra,* by six (6) years.