**UNITED STATES of America, Appellee,**

v.

**Robert COSTA and Melvin Elliott, Appellants.**

**Nos. 235, 236, Dockets 33760, 33814.**

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1969.

Decided Dec. 15, 1969.

Certiorari Denied June 1, 1970.
See 90 S.Ct. 1843.

John W. Nields, Jr., Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, Paul B. Galvani, Asst. U. S. Atty., of counsel), for appellee.

Michael J. Kunstler, New York, N. Y. (William M. Kunstler, New York, N. Y., William Mogulescu, New York City, of counsel), for Robert Costa.

Joshua N. Koplovitz (Koplovitz & Fabricant, Selig Lenefsky, New York, N. Y., of counsel), for Melvin Elliott.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge:

Elliott and Costa appeal from their conviction, after trial before Judge Levet and a jury in the District Court for the Southern District of New York, of selling 81.5 grams of heroin to federal narcotics agent Coursey in violation of 21 U.S.C. §§ 173 and 174, and of conspiring to do so.

The testimony of Coursey and of other agents, which has its bizarre aspects, was as follows: About 8:30 P.M. on August 4, 1967, an informant introduced Coursey to Elliott at a bar on West 52nd Street in New York City. Elliott offered to sell ⅛ of a kilogram of heroin for $3,500. Coursey agreed but Elliott demanded cash on the barrelhead. Coursey, exceedingly well equipped with funds, countered with a proposal to take $3,500 in bills, tear each in half, give one part to Elliott, and retain the other pending delivery of the heroin. Elliott accepted, the surgery was performed in the bar then and there, and Elliott agreed to deliver the heroin to the informant's room at the Americana Hotel.

Elliott, under surveillance by other agents, took a taxi to Greenwich Village. Around 1 A.M. an agent observed him between the Hotel Earl and the Bon Soir night club on West 8th St. At 2:15 A.M. three agents saw him enter the

Americana. Elliott came to the informant's room and went with Coursey into the bathroom, the informant remaining outside. Elliott delivered the narcotics and Coursey tendered $3,300 in torn bills, retaining the halves of two $100 bills. Elliott counted the bills and, hardly to Coursey's surprise, said that two $100 bills were missing. Coursey assured him that his arithmetic was in error; instead of verifying Elliott's count, Coursey persuaded him to telephone the person, presumably the supplier of the heroin, who had the other halves. When the complaint Elliott had the bad luck to dial the wrong number and started for the telephone directory, Coursey helpfully suggested he call information instead. Elliott requested the number of the Bon Soir night club, asked for "Bobby" (defendant Costa's first name), and inquired—and apparently learned—how many $100 bills there were. Coursey then produced the two missing halves, asked for Elliott's telephone number, and went out into the hotel room ostensibly to get a pencil and paper. While Elliott obligingly remained in the bathroom, Coursey conducted a field test with positive results.

Elliott left and was followed by other agents to the Bon Soir. He took a table where Costa joined him. In plain view of the agents and, we suppose, of others, Elliott gave Costa the stack of torn bills and Costa took a similar stack from his breast pocket. Then he compared and counted the two piles, and gave Elliott part of the money. Costa asked if there had been any trouble. On getting a negative response he asked when the buyer would "want more stuff." Elliott responded "In the future." A Government chemist testified that the powder received from Elliott weighed 81.5 grams—considerably less than the promised ⅛ kilo—and was 61.5% heroin hydrochloride. There was no evidence that the torn bills were ever traced.

■ As soon as Coursey used the word "informant," Elliott's counsel objected to any further testimony unless the informant's identity was disclosed. The Court deferred ruling, and the direct examination was concluded. At the end of this the judge took up the question of divulging the informant's name. The Government objected on the ground that the informant had played no substantial role, and the further ground that Costa had no standing to raise the issue, a position irrelevant with respect to Elliott and erroneous with respect to Costa.[1] Defense counsel were equally unhelpful to the court. When asked about the necessity for disclosure, Elliott's attorney referred generally to the Sixth Amendment's requirement of confrontation, and Costa's said only that he would like "to investigate him and find out more about him" since "he might give conflicting testimony for all I know." The court declined to order divulgence.

By the afternoon of the second day of trial, a Tuesday, the cloak of secrecy about the informant disappeared. Defense counsel had obtained the reservations and room records of the Hotel Americana, and found the name of the informant and his provenance of Cleveland, Ohio. Elliott's counsel, after unsuccessfully demanding that the Government produce him, sought a continuance until Thursday. Counsel was unable to state what the informant would testify, but said he would like to ask what happened in the hotel room. The Government opposed any adjournment, the court directed the defense to present its case, and, there being none, adjourned the trial until Thursday for summations and charge.

■ The issue here is not, as in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and many other cases that have been cited to us, the extent of the Government's obligation to divulge the identity of an in-

1. If the informer played a sufficiently substantial role for Elliott to be entitled to have his identity revealed, Costa, who was on trial for the same substantive offense arising out of the same transaction, was equally entitled to the information even though the informer had not seen him.

former. Here the defense found it out only a day after the Government's refusal.[2] The question thus is simply whether the judge abused his discretion in denying a continuance for the presentation of the defense case. We think not. The conduct of defense counsel before, during, and after trial indicates that they were more interested in preserving a point for appeal than in the off chance that the informer's testimony would help them. As a result of disclosure in the Government's bill of particulars, the defense had been in a position for six months to seek the information from the Hotel Americana, or, if this was not successful, to subpoena the records for the trial. While defense counsel may have supposed, as the Government represents it did, see fn. 2, that the informant would not have registered under his true name, if they were seriously interested in locating him it would not have been difficult to pursue the lead the bill of particulars had disclosed. Furthermore, as matters worked out, the trial was adjourned for a day, and we cannot believe that if at the opening of court on Thursday defense counsel had made an offer that the informant would give important proof, the judge would have refused to allow them to present it. Neither was there any post-verdict motion alleging that the informant could have offered any testimony "relevant and helpful to the defense," Roviaro v. United States, *supra*, 353 U.S. at 60–61, 77 S.Ct. at 628. Mere speculation that the informant might have said the whole episode never occurred is not enough, especially in the face of the corroboration of Coursey by the three agents who saw Elliott enter the Americana and the two who witnessed the money-counting at the Bon Soir.

Appellants' other main point is this: After the close of the prosecution's case,

counsel for Costa moved "that in the event that the defendant Costa takes the stand in his own behalf that there be no questions by the Government with reference to any criminal record, other than those crimes which directly relate to credibility, such as the crime of perjury and that counterfeiting is not such a crime." When the judge asked whether counsel had any authorities for that position, he said he had none. The prosecutor took the unqualified position that if Costa went on the stand, "he must also be subject to the rules concerning cross-examination and the Government intends to cross-examine the defendant with respect to any conviction he has." After expressing some sympathy with defense counsel's position as a matter of policy, the judge said the law forced him to deny the motion.

■ It does scant credit to Costa's counsel or, for that matter, to the prosecutor, that the court should have been given so little aid in a trial nearly seven months after our decision in United States v. Palumbo, 401 F.2d 270, 272–273 (2 Cir. 1968), cert. denied, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969), where we held that a trial judge does have power, in the exercise of sound discretion, to make an advance ruling prohibiting the use of a prior conviction for impeachment of a defendant "if he finds that a prior conviction negates credibility only slightly but creates a substantial chance of unfair prejudice, taking into account such factors as the nature of the conviction, its bearing on veracity, its age, and its propensity to influence the minds of the jurors improperly." However, we have declined to reverse a post-*Palumbo* conviction in another case where the judge asked for authority concerning his power to restrict cross-examination by the Government with respect to other crimes and

---

2. When we inquired at argument what public policy was served by the Government's refusing to disclose a name the defendants were thus bound to ascertain, counsel represented that the Government had had no reason to believe the informant had registered under his correct name. But for this representation we would have been tempted to reverse these convictions; a prosecutor should not place needless and pointless road-blocks in the path of the defense.

was furnished none. United States v. Zubkoff, 416 F.2d 141, 143–144 (2 Cir. 1969). Even more important, there was no offer of proof with respect to Costa's testimony sufficient for the judge to compare the relevance of the prior conviction to credibility with the importance to Costa's defense of having him testify free from the prejudice which might be created by reference to it. Without this there is no "meaningful invocation of judicial discretion." Hood v. United States, 125 U.S.App.D.C. 16, 365 F.2d 949, 951 (1966). See also United States v. Cacchillo, 416 F.2d 231, 234 (2 Cir. 1969). Furthermore, even if the judge's discretion had been properly invoked, he would have been well justified in refusing to rule that a counterfeiting conviction, represented to us as being fairly recent, could not be used for impeachment; a conviction for "uttering" false money could well be viewed as bearing on credibility, as one for uttering a false statement surely would. No different conclusion is required because the prosecution here invoked the inferences which the statute authorizes to be drawn from possession of hard narcotics, 21 U.S.C. § 174; [3] the phrase "unless the defendant explains the possession to the satisfaction of the jury" does not mean that he must do this by taking the stand. See United States v. Gainey, 380 U.S. 63, 69–71, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); United States v. Secondino, 347 F.2d 725, 727 (2 Cir.), cert. denied, Massari v. United States, 382 U.S. 931, 86 S.Ct. 322, 15 L.Ed.2d 342 (1965). The fact that, as a practical matter, this may be the only manner in which a defendant can explain the possession, may warrant more severe limitation on the Government's use of prior convictions for impeachment, but does not relieve the defense of the need to invoke the judge's discretion in a proper way.

 Appellants' final point is that the evidence was insufficient. What they mean is that the agents were lying. That was for the jury.

Affirmed.

---

3. We adhere to our previous rulings concerning the constitutionality of this statute. United States v. Bennett, 409 F.

2d 888 (2 Cir. 1969); United States v. Cuadrado, 413 F.2d 633, 636 (2 Cir. 1969).