**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James GORNICK, Defendant-Appellant.**

**No. 18671.**

United States Court of Appeals, Seventh Circuit.

June 9, 1971.
Certiorari Denied Oct. 12, 1971.
See 92 S.Ct. 161.

Fairchild, Circuit Judge, concurred and filed opinion.

Kiley, Circuit Judge, concurred and filed opinion.

Charles O. Brizius, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Richard J. Ciecka, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before HASTINGS, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendant James Gornick was charged in a one-count indictment [1] with the

1. The body of the grand jury indictment returned in the United States District Court for the Northern District of Illinois, reads:

"On or about August 8, 1969, at East Dundee in the Northern District of Illinois, Eastern Division,
JAMES GORNICK,
defendant herein, did by force, violence and intimidation, knowingly and willfully take from the person and presence of Ray M. Beu, President of the First National Bank of Dundee, East Dundee, Illinois, the deposits of which were then and there insured by the Federal Deposit Insurance Corporation, a sum of money, approximately $8,834.00, which money was then and there in the care, custody, control, management and possession of the

armed robbery of the First National Bank of Dundee, Illinois on August 8, 1969, in violation of Title 18, U.S.C.A. § 2113(a) and (d). He has been represented at all times by court-appointed counsel. Following a trial by jury and verdict of guilty, judgment was entered thereon and defendant was ordered committed to the custody of the Attorney General for a period of fifteen years, to run concurrently with the balance of a sentence remaining for which defendant was then on parole. Defendant appeals. We affirm.

On appeal, defendant charges a number of procedural errors relating to the alleged prejudicial denial of certain pre-trial and in-trial petitions and motions as requiring reversal and remandment for a new trial.

Viewing the evidence in the light most favorable to the Government, as we must do, the basic facts of the bank robbery are simple and uncontroverted. The First National Bank of Dundee, Illinois, at East Dundee, was robbed by a lone armed bandit on Friday, August 8, 1969, at about 12:45 p. m. The bank robber fled with $8,834.00 in money from federally insured deposits belonging to the bank.

At the time of the robbery, Raymond Beu, the bank president, was seated at his desk. He felt something against his left shoulder, turned and saw a dark tan-complexioned man wearing a billed hat, sunglasses, and holding a golden-colored florist's box. This man handed Beu a white flour sack. When Beu did nothing, the robber withdrew a single-barreled shotgun from the florist's box. As Beu arose from his chair, he looked through the robber's sunglasses into his eyes, viewing him squarely in the face. The robber told Beu, "Come on, come on, I'll use it."

Beu walked to the employees' side of the bank tellers' stations. He placed money from the first three stations into the flour sack handed him by the robber, who was then standing in the lobby about 15 feet from Beu and two bank tellers. The teller at station one was in a back room and did not witness the robbery. As Beu was obtaining money from the third teller station, the robber said, "Hurry up, hurry up, throw it." Beu then threw the bag of money over the counter to the robber who fled from the bank. Beu ran to the front door of the bank and saw the robber drive away in what appeared to be a tan 1960 Chevrolet Impala, with no license plate on the rear.

Barbara McMillen and Lauren Abig, bank tellers at stations two and three, respectively, corroborated Beu's narration of the conduct of the robber while he was inside the bank. All three described the robber as approximately 5′ 10″ tall, about 160–180 pounds, heavily suntanned, in his middle thirties, wearing a green shirt and trousers, a brown or tan hat with a brim or bill, sunglasses, and carrying a large golden-colored florist's box. On August 8–9, 1969, following Gornick's arrest, the FBI obtained the following description of him: 5′ 10″, 160 pounds, ruddy complexion, suntan and 38 years of age.

The money taken from the bank was never recovered, and the shotgun, florist box or clothing used by the robber were never found.

About 3:30 p. m. on the afternoon of the bank robbery, FBI Agent Carr was in a cornfield at the southeast corner of the intersection of Healy Road and Penny Road in the Barrington Hills area, three miles from the robbed bank. He saw a 1961 brown four-door Chevrolet, which was burning. When the flames

First National Bank of Dundee, and in committing said offense the defendant did assault and put in jeopardy the life of Ray M. Beu, President of the First National Bank of Dundee, by the

use of a dangerous weapon, to wit: a shotgun; in violation of Title 18, United States Code, Sections 2113(a) and 2113(d)."

were extinguished, the inside of the car was completely gutted. He obtained the following vehicle identification number from it: 11839J88882. About thirty minutes later, Beu was taken by FBI agents to a gas-service station in East Dundee where this burned vehicle had been towed. Beu identified this vehicle as being the same car the robber used.

At the trial, with defendant Gornick present in the courtroom, Beu, McMillen and Abig each made a positive identification of Gornick as the man who robbed the bank in their presence on August 8, 1969.

The trial court denied a number of pretrial motions to suppress evidence and for certain affirmative relief.

## I

The first question presented was whether defendant was denied due process by allowing witnesses to make in-court identifications of him following certain pretrial photographic identifications. In the hearing on the motion to suppress, the following was established.

In 1957, defendant Gornick was sentenced to fifteen years in prison for robbing the same bank in East Dundee. When the August 8, 1969 robbery occurred, twelve years later, Beu was under the impression that Gornick was still in prison and did not know he had been released in the spring of 1969. On Saturday morning, August 9, 1969, the day after the bank robbery, Beu was listening to an early radio newscast and learned for the first time that a man named Gornick had been arrested as a suspect in the bank robbery.

Earlier that Saturday morning, about 1:00 a. m., after the robbery, the two tellers McMillen and Abig, were shown a series of photographs at the Dundee police station by FBI Agent Lang, including a photograph of Gornick taken on April 2, 1969 prior to Gornick's release from prison. Neither witness was able to identify the bank robber from among these photographs. A later comparison between that pre-release photograph and one taken of Gornick the night of his arrest revealed substantial changes in his facial characteristics.

At 9:00 a. m. that Saturday morning, Beu displayed a 1957 newspaper photograph of Gornick to McMillen and Abig about two minutes before the bank opened and while they were getting their cages ready. He said this was a photograph of the man who robbed the bank yesterday and that his name was Gornick. Neither teller recognized the bank robber from that photograph nor did they read the accompanying newspaper article.

Between 10:30 and 11:00 a. m. that morning, FBI Agent Kaszmarek displayed a spread of six photographs to McMillen and Abig *separately*. The spread included a photograph of Gornick taken after his arrest some hours before. The two tellers had not then seen any newspaper accounts of the bank robbery or photographs taken of Gornick after the 1969 robbery, only the 1957 newspaper photograph exhibited to them earlier by Beu. After viewing the spread of six photos, McMillen said the picture of Gornick "strongly resembled the bank robber," and Abig said of the photo of Gornick: "This man is the man that was in the bank that held the bank up yesterday."

Three days later, August 12, 1969, FBI Agent Hall exhibited a spread of six photographs to Beu from which he selected the photograph of Gornick, taken after his arrest, as being a photo of the bank robber. He had already seen newspaper photos of Gornick but said he was not influenced by them.

Defendant's counsel was allowed a wide latitude of cross-examination of Beu, McMillen and Abig at the hearing on the motion to suppress, as well as of the FBI agents who testified.

In determining the propriety of these pretrial photographic identification practices, the Supreme Court gave its approval and laid down the appropriate guidelines in Simmons v. United States, 390 U.S. 377 at page 384, 88 S.Ct. 967 at

page 971, 19 L.Ed.2d 1247 (1968), where it said:

"We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301–302. [87 S.Ct. 1967, 1972–1973, 18 L.Ed.2d 1199.] * * *"

We have fully examined the transcript of the testimony relative to the validity of the pretrial photographic identification before us here. Without belaboring this opinion with a further detailed evidentiary recital or comparison, we find the factual situation present here to be stronger in support of the trial court's ruling than in *Simmons*. Likewise, we have examined the photographs introduced and made a part of the record.

■ The defendant had denied committing the robbery but was unable to satisfactorily account for his activities the day of the crime. None of the fruits of the crime had been found. Other items of circumstantial evidence which strongly pointed to defendant had not been developed at the time the FBI exhibited the spread of photographs. Under all the attendant circumstances we conclude that the photographic identification was *not* so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification as determined by *Simmons*, *supra*. There was no denial of due process to defendant in the resulting in-court identification by the witnesses at trial. United State v. Cox, 7 Cir., 428 F.2d 683, 686–687 (1970), cert. denied,

400 U.S. 881, 91 S.Ct. 127, 27 L.Ed.2d 120. *Cf.*, United States v. Broadhead, 7 Cir., 413 F.2d 1351, 1359 (1969), cert. denied, 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508.

■ In light of our conclusion that defendant's in-court identification was not tainted by the pretrial identification procedure followed, we find no substance in additional claims presented. The contention that somehow defendant should have been represented by counsel when pretrial photographic identification by witnesses was made is unwarranted, as is the argument that the in-court identification of him was the result of "a suggestion of one to one confrontation." United States v. Robinson, 7 Cir., 406 F.2d 64, 67 (1969), cert. denied, 395 U.S. 926, 89 S.Ct. 1783, 23 L.Ed.2d 243.

Further, we agree with defendant that his argument that his motion for a line-up should have been granted now becomes moot.

## II

■ Defendant asserts that the destruction of certain original note papers by the FBI required suppression of identification testimony. The fact is that tellers McMillen and Abig each wrote a physical description of the bank robber on separate pieces of paper immediately after he fled from the bank. They gave the pieces of paper to an FBI agent who incorporated this information in his report and then destroyed the original note papers. The FBI report was produced to defendant at trial. The agent in question was not called by defendant to the stand. The suppression hearing testimony was that the original notes were accurately transcribed into the agent's report. We find no error here. United States v. Spatuzza, 7 Cir., 331 F.2d 214, 218 (1964). *Cf.*, United State v. Mirro, 7 Cir., 435 F.2d 839, 841 (1970).

## III

■ Before trial, defendant moved to suppress evidence of his prior criminal

record in the event he testified in his own behalf. The precise ruling requested was: "That the defendant be allowed to testify without fear or impeachment by his criminal record or guilty plea and conviction of 1957 bank robbery." A pretrial hearing was held.

There is nothing in the record to indicate even the possibility of Gornick testifying in his own behalf at trial. The trial court was not advised what evidence Gornick would contribute to his own defense if he were to testify. There was nothing shown upon which the trial court might exercise its discretion in a meaningful way. In effect, it was a request for a ruling in the abstract.

It appears to be a general rule of this circuit that, with some exceptions, the Government may impeach a defendant's credibility by inquiring of his past convictions. United States v. Escobedo, 7 Cir., 430 F.2d 14, 18–20 (1970) and cases therein cited, Circuit Judge Kiley concurring at 21–22; United States v. Cox, 7 Cir., 428 F.2d 683, 689 (1970), cert. denied, 400 U.S. 881, 991 S.Ct. 127, 27 L.Ed.2d 120; United States v. Morefield, 7 Cir., 411 F.2d 1186, 1188 (1969), cert. denied, 396 U.S. 916, 90 S.Ct. 238, 24 L.Ed.2d 194. See, 3 Wigmore on Evidence, §§ 889–891 (1940). *Escobedo*, *Cox* and *Morefield* all cite and rely upon the March, 1969, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, Rule 6–09, 46 F.R.D. 161, 295, as indicative of approval of the above general rule and evidencing rejection of the discretionary power or so-called "rule of thumb" to be lodged in the district court, favored by Luck v. United States, 121 U.S.App.D.C. 151, 348 F.2d 763, 766–769 (1965), as refined in Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), and approved by Judge Kiley in his concurring opinion in *Escobedo, supra*.

As noted by Judge Fairchild in his concurring opinion in this case, Rule 609 of the Proposed Rules of Evidence,

March, 1971, 51 F.R.D. 315 at page 391, was revised in a number of respects to conform to *Luck, supra* and *Gordon, supra*. This would, *inter alia* vest the exercise of a discretionary power in the district court to exclude evidence of a prior conviction for impeachment purposes if "the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice."

Running throughout some of the decided cases is the observation that in any event the district court did not abuse a discretion it had exercised or was without the offer of proof to make a "meaningful invocation of judicial discretion." United States v. Costa, 2 Cir., 425 F.2d 950, 954 (1969), cert. denied, 398 U.S. 938, 90 S.Ct. 1843, 26 L.Ed.2d 272. However, even if the exercise of discretionary power by the district court be favorably regarded, as recommended in the March, 1971, revision of the Proposed Rules of Evidence, *supra*, it can have no application here since the district judge was asked to pass upon the question in the abstract only. United States v. Cacchillo, 2 Cir., 416 F.2d 231, 234 (1969). We find no error here in the denial of this motion to suppress. *Cf.*, United States v. Morefield, *supra*, 411 F.2d 1188–1189.

### IV

Finally, defendant contends that the testimony of Agent Green that when defendant was arrested, fingerprinted, photographed and fully searched, his wallet contained $357 in cash of which $191 was the proceeds of a paycheck he had cashed that morning, should have been suppressed.

Defendant did not raise the question of the relevancy of such testimony below and it may not be raised on appeal for the first time. United States v. Lyon, 7 Cir., 397 F.2d 505, 508 (1968), cert. denied, Lysczyk v. United States, 393 U.S. 846, 89 S.Ct. 131, 21 L. Ed.2d 117.

■■ However, the testimony in the record on the suppression hearing shows that defendant found it necessary to cash his paycheck on the day of the bank robbery in the sum of $191 and after allegedly spending the entire day drinking in Chicago bars was found that night with a substantially greater amount of money. The unexplained possession of an unusual amount of money after a robbery, when there is a contemporaneous showing of prior impecuniosity, becomes competent evidence to connect the possessor with the robbery, United States v. Hephner, 7 Cir., 410 F. 2d 930, 933 (1969), and the admission of this type of evidence is entrusted to the sound discretion of the trial court. United States v. Crisp, 7 Cir., 435 F.2d 354, 360 (1970). In this instance, that discretion was not abused.

We find other reasons advanced by defendant for the suppression of this evidence to be without merit.

We have not found it necessary to recite the evidence of defendant's other activities after the robbery in question, nor the circumstances surrounding his alleged purchase of the Chevrolet car used in the robbery. The determination of the weight to be accorded the evidence and the credibility of the witnesses being within the province of the jury, we are convinced the jury was justified in finding defendant guilty beyond a reasonable doubt. Neither have we detailed the numerous and varied pretrial motions and hearings thereon nor the several interruptions of the trial by jury to hear defendant on trial motions and objections, including evidentiary hearings, all without the presence of the jury. It is sufficient to say that defendant's trial counsel went to great lengths for the protection of his client's best interest. The trial court demonstrated a high degree of patience, skill and impartiality to indulge trial counsel and accord defendant a fair trial. We conclude defendant received one.

The judgment of conviction and sentence appealed from is affirmed.

Affirmed.

FAIRCHILD, Circuit Judge (concurring).

I fully agree with the result, with parts I, II and IV of the opinion written by Judge Hastings, and with part III insofar as it states and applies the general rule in this circuit with respect to impeachment of a defendant who takes the stand in a criminal case by showing his prior convictions.

I would choose, however, a rule for the future like that part of Rule 21, Uniform Rules of Evidence, providing:

"If the witness be the accused in a criminal proceeding, no evidence of his conviction of a crime shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence admissible solely for the purpose of supporting his credibility."

As stated in a 1968 decision, "The author of this opinion, speaking individually, holds the view that the proposed rule is sound policy and ought to be adopted by legislation or exercise of judicial rule making power. But injustice resulting from the existing rule would have to be much more apparent than in this case in order to justify changing the rule by decision of a particular appeal." [1]

I feel no concern for a guilty defendant who is dissuaded from perjury by the prospect of having his record of convictions put before the jury or one who was not dissuaded, but whose perjury was not persuasive. But I do think there is a real probability of instances where a defendant who is innocent of the particular offense charged, or perhaps guilty of only a lesser, included offense, will either be dissuaded from telling his story, and unjustly convicted because of his silence, or, if he tells it, unjustly convicted because of his record.

---

1. United States v. Sternback, (7th Cir., 1968), 402 F.2d 353, 356.

In my judgment, for whatever it may be worth, the ability of a prosecutor to discredit an accused who takes the stand and lies is not so substantially advanced by exposure of past criminal convictions as to justify imposing on an innocent defendant with a past record the dilemma between silence and exposure of his record.[2]

I note that Rule 609, Proposed Rules of Evidence for United States Courts and Magistrates, March 1971 Revised Draft, will make certain changes in the existing rules. Among its provisions is one which will exclude evidence of a witness' conviction if "the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." This provision for exercise of discretion had its source in Luck v. United States, (1965), 121 U.S.App.D.C. 151, 348 F.2d 763, 767, and Gordon v. United States, (1967), 127 U.S.App.D.C. 343, 383 F.2d 936.

This provision, like the rest of Rule 609, is not limited to witnesses who are defendants in criminal cases, although that may be the situation in which the provision would be must useful. If adopted, the provision would, to the extent judges exercise discretion in favor of a witness-defendant, avoid the dilemma referred to. The idea of leaving the matter in the discretion of the judge must be based on an assumption that a judge will usually be able to pick out the defendant who is probably innocent and will probably testify truthfully and to relieve him from presentation of his record of prior convictions. With all respect, however, my own preference is for a rule which would categorically exclude prior convictions for the purpose of impeachment of a defendant in a criminal case, subject to the exception in proposed Uniform Rule 21.

KILEY, Circuit Judge (concurring).

I concur in Judge Hastings' opinion. I do wish, however, to say a few words on the subject of the permissible use of prior convictions to impeach defendant as a witness in his own behalf in a criminal case.

In my concurring opinion in United States v. Escobedo referred to by Judge Hastings, I said that I hesitated to agree that there was an established rule in this Circuit which contemplated the use of prior convictions for impeachment purposes "as a mere exercise of discretion." I thought that this court should not reject out of hand the District of Columbia "rule of thumb" which limited the introduction of evidence of prior convictions to "crimes involv[ing] the element of falsehood."

The use of the prior convictions for impeachment purposes is to test the credibility of the defendant. It seems clear to me therefore that only those convictions which have a bearing on credibility, such as those involving dishonesty or false statements, should be admitted for the purpose. It may well be that a conviction for an offense involving the element of false statements can be used to impeach the credibility of a defendant who testified at his trial for bank robbery. The reverse would not be true. The bank robbery conviction might have no effect on a defendant's credibility in a case involving false statements.

I am troubled somewhat by Proposed Rule 609(a) General Rule (1) of the Proposed Rules of Evidence. I do not

---

2. For comment critical of the present rules, see McCormick, Evidence, 1954, pp. 93, 94; 70 Yale Law Journal 763 (1961) Note, Other Crimes Evidence; 78 Harvard Law Rev. 426 (1964) Note, Procedural Protections; 12 St. Louis University Law Journal 277 (1968) Comment, Impeachment of the Defendant-Witness by Prior Conviction; 19 Hastings Law Journal 919 (1968) Note, Impeachment by Prior Crimes; 37 University of Cincinnati Law Review 167 (1968) Note, Prior Conviction Evidence; 71 West Virginia Law Review 160 (1969) Note, The Use of Prior Convictions to Impeach the Credibility of the Criminal Defendant; 6 Crim.Law Bulletin 26 (1970) Cohen, Impeachment of a Defendant-Witness By Prior Conviction.

see how a prior conviction that was punishable by death or more than a year in prison per se bears on credibility, except *in crimen falsis* offenses involving dishonesty or false statements. I am in agreement with General Rule (a) (2)—approving use of *in crimen falsi*, and (3)—balancing probative value of the evidence of prior conviction against the danger of unfair prejudice, in so far as it refers to (2).

I would not, at least at this time, favor, as Judge Fairchild does, Rule 21 of the Uniform Rules of Evidence.[1] I favor the limited discretion rule proposed in Rule 609(a) subject to the objection noted above in the preceding paragraph.

I agree with Judge Hastings, and with Judge Friendly in United States v. Costa, 425 F.2d 950, 954 (2nd Cir. 1969), cert. den. 398 U.S. 938, 90 S.Ct. 1843, 26 L.Ed.2d 272, to the extent that where a pre-trial motion for exclusion of convictions is made, there should be a showing of what the substance of defendant's testimony would be, *e. g.*, alibi, and what prior convictions the government proposes to use for impeachment if the defendant took the stand. This procedure would enable the district court to determine whether the defendant intended to take the witness stand, whether the nature of his defense is frivolous, whether the government intends to introduce convictions not involving *crimen falsi*, and whether the prejudicial effect of introducing convictions which do involve *crimen falsi* outweighs the probative value of that evidence. This procedure would enable a reviewing court to determine the prejudicial effect in the trial resulting from a pre-trial ruling adverse to the defendant.

I think that a pre-trial motion request of a defendant for determination of the question is a more orderly approach to solving the problem than an interruption of the trial. However, this practice might not be suitable where, for example, the judge is to be the trier of fact

and a defendant—if he takes the stand —giving the substance of his testimony beforehand might conceivably prejudice him. Also in some cases it may be unnecessary to ask a defendant to state the substance of what he might testify to, as for instance in the case of a seriously stale conviction. It may well be that a pre-trial determination should not be required. There may be cases in which a defendant may not wish or request pre-trial determination. He may be reluctant to indicate to the judge what the substance of his testimony would be if he took the stand. In this latter event, of course, the matter would have to be determined by development at the trial.

I agree with Judge Hastings that in the case before us though presented before trial the question was presented abstractly and that the district court did not err in denying defendant's motion to suppress his twelve year conviction.

1. As of September, 1965, the Uniform Rules of Evidence had been adopted only

in Kansas, Panama Canal Zone, and Virgin Islands.