**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Frank Harry TUBBS, Defendant-Appellant.**

**No. 71–1427.**

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1972.

Decided May 15, 1972.

Joseph F. Phelan, Chicago, Ill., for defendant-appellant.

Stanley B. Miller, U. S. Atty., William F. Thompson, William Andrew Kerr, Asst. U. S. Attys., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and KILEY, Circuit Judge.

CASTLE, Senior Circuit Judge.

The defendant-appellant, Frank Harry Tubbs, prosecutes this appeal from the judgment of conviction and sentence entered by the District Court following his trial before a jury on an indictment

charging him with the offense of bank robbery in violation of 18 U.S.C.A. § 2113(a). The court sentenced the defendant to 20 years imprisonment to run concurrently with a sentence previously imposed.

The defendant urges a reversal of his conviction on the grounds (1) that insufficient evidence was presented by the government to support a verdict of guilt; (2) that the court erred in overruling defendant's objections to questions put to him on cross-examination which revealed the defendant's prior convictions for bank robbery and armed robbery; and (3) that the court erred in refusing defense counsel's 4:00 a. m. telephone request that the jury be sequestered at that time and be permitted to resume its deliberation later that day.

 The record discloses that at the close of the government's case in chief the defendant made a motion for a judgment of acquittal based on insufficiency of the government's evidence. The motion was denied, and the defendant proceeded to call witnesses and present his defense. By introducing evidence on his own behalf, defendant abandoned his motion for acquittal at the close of the government's case in chief.[1] He made no motion for judgment of acquittal at the close of all the evidence, but by a post-verdict motion did seek a judgment of acquittal n. o. v. or a new trial on the assertion, *inter alia,* that the verdict was not supported by substantial evidence. This post-trial motion was denied. Consequently, insofar as defendant's contention addressed to sufficiency of the evidence is concerned our determination on review must be made in the light of all the evidence. United States v. Greene, 10 Cir., 442 F.2d 1285, 1286 n. 3. And in resolving the issue tendered concerning the sufficiency of the evidence to sustain defendant's conviction we must view the evidence, together with all reasonable inferences which may be drawn therefrom, in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Mims, 7 Cir., 340 F.2d 851, 852.

 The defendant's challenge to the sufficiency of the evidence is based on the fact that the witnesses who were present at the scene of the robbery were unable to positively identify the defendant as the man who robbed the bank.

The evidence establishes that on December 22, 1969, at approximately noon, the branch of the Indiana National Bank located at 215 E. 38th Street, Indianapolis, Indiana, the deposits of which were insured by the FDIC, was robbed of $1435 by a man who appeared at the cage of Phillip Rihm, a teller, exhibited a revolver, announced "this is a hold-up", pushed a white pillow case across the counter, and instructed Rihm to fill it with large bills. After receiving the money in the pillow case, the robber immediately turned away and left the premises. Both Rihm, and a bank customer who was standing next to Rihm's window, testified that the robber wore a woman's nylon stocking pulled over his head. Neither was able to describe the robber's facial features or make any identification of the defendant as the robber on such a basis. Each of these witnesses did testify that the defendant resembled the robber in the physical characteristics of height and build.

Concededly, the testimony of Rihm and the bank customer with respect to the resemblance between the defendant and the robber as to height and build was insufficient to establish identity. But there is testimony of additional witnesses which evidences the existence of circumstances which fully warranted the jury in concluding that the defendant was the person who committed the robbery. In this respect there is testimony from which the jury could have found that the defendant's girl friend drove him to the

---

1. United States v. Aman, 7 Cir., 210 F.2d 344, 345–346; United States v. Thayer, 7 Cir., 209 F.2d 534, 536.

corner of 37th and Delaware streets—within one block of the bank—on the day of the robbery, arriving shortly before noon; that she parked her white convertible 1968 model Buick facing east on 37th street just east of the intersection; that the defendant left the car after requesting her to wait and stating that he would "just be a minute"; that she kept the motor running and the defendant left in the direction toward the rear of the car; that he returned a few minutes later from the same direction and got in the passenger side of the car; when defendant returned he was carrying what appeared to be a coat, all balled-up with something white hanging out; that when the defendant got in the car he slumped down and asked to be driven to his brother's house, where he left the car. And there is the testimony of Eleanor Bottorff who resided at 3708 No. Delaware within one block of the bank. At about noon on the date involved she was at her kitchen window looking for the mailman when she observed a man coming from the bank's parking lot and across the lawn of the first house south of the bank. He had a woman's stocking over his face and was carrying something. He proceeded down Delaware street to a white car parked facing east on 37th street just east of the southeast corner of 37th and Delaware and got into the car from the passenger side. The witness called her husband Ralph to the window and went to call the police. Ralph Bottorff testified that he observed the car before it drove away. He identified it as a Buick convertible—a 1967, '68 or '69 model—from the type of tail lights it had.

The testimony above referred to placed the defendant within a block of the bank a few minutes before the robbery occurred—and with a car waiting with the motor running. And it traced the stocking-masked robber from the bank's premises to the awaiting white Buick convertible. This evidence was ample to sustain the jury's conclusion that the defendant was the stocking-masked man who robbed the bank.

The defendant testified on his own behalf. He admitted that he was in the vicinity of the bank, about a block away, at the time of the robbery but explained that his purpose in having his girl friend drive him to the area was to visit a friend. He identified this friend as a brother of Phyllis Sprouls, who lived with her, at Mrs. Sprouls' residence on Ruskin street. The defendant called Mrs. Sprouls as a witness but she was unable to say with certainty that the defendant was the person who came to her house about the time of the robbery and inquired for her brother. According to Mrs. Sprouls' testimony the person who called at her house came from a car parked in front of her house on the left side of Ruskin street facing north, and got back into the car on the driver's side and drove off by himself. And she described the visitor's clothing as different from that the defendant testified he was wearing on the day of the robbery. The jury was justified in believing the defendant was not telling the truth in his attempted explanation of his presence in the vicinity of the bank.

■■ On cross-examination the prosecutor, over objections by the defendant which the court overruled, elicited from the defendant that in June 1970 he was convicted in Connecticut for the offense of bank robbery and was currently serving a 19 year sentence on that conviction, and that in 1965 he had been convicted in Indiana for armed robbery and served time on that conviction. The defendant contends that the trial court erred in permitting the government, over his objection, to question him with respect to these prior convictions. He argues that the prejudicial effect inherent in such evidence makes its admission inconsistent with his right to a fair trial—that it unduly influenced the jurors to return a guilty verdict by implanting in their minds an hypothesis that a conviction for bank robbery evidences a disposition toward such offense. We are not persuaded by this argument of the defendant that it was not within the trial court's discretion to permit the govern-

ment to question him on cross-examination with respect to the existence of the two felony convictions because such convictions lacked probative value on the issue of defendant's credibility and that reference to them unfairly resulted in inherent prejudice to the defendant. Defendant's trial took place in January 1971. The prior convictions here involved were not too remote.[2] And established procedure permits impeachment through the use of prior felony convictions. United States v. Senior, 7 Cir., 274 F.2d 613, 616; United States v. Cox, 7 Cir., 428 F.2d 683, 689. The jury was instructed with respect to the limited purpose of such evidence.

On the third and final day of defendant's trial the jury was excused for a recess at 4:30 p. m. Proceedings resumed at 7:00 p. m., and after hearing the arguments of counsel and being instructed by the court the jury retired to deliberate at 8:30 p. m. Due to recesses taken during proceedings on that day, the jury up to that time had been in the court room a total of about five and one-half hours. The record discloses that the jury arrived at its verdict at 4:30 a. m. the following morning. Proceedings were reconvened at 5:15 a. m. The jury returned its verdict finding the defendant guilty, was polled, and then discharged.

At 4:00 a. m. that morning counsel for defendant telephoned the trial judge, suggested that in view of the hour any verdict might be the result of juror fatigue and exhaustion, and requested that the jury be sequestered at that time and permitted to resume its deliberation later that day. The court refused the request.

█ Trial counsel for the defendant did not object to the length of the jury's deliberation and the trial judge stated that in his view the number of hours was not excessive. No complaint was made at any time by any member of the jury and no request was made by any juror that the jury be permitted to interrupt its deliberation so that it could rest. Defendant complains of the hour at which the jury arrived at its verdict but points to nothing in the record which would support a conclusion that the verdict was the product of juror exhaustion or fatigue. The verdict was arrived at within a half-hour after defendant's trial counsel first suggested to the court that further deliberation without a recess "might" result in juror fatigue. On the basis of this record we perceive nothing which would warrant our holding that the trial judge's action in the premises constitutes an abuse of discretion. See: United States v. Parks, 1 Cir., 411 F.2d 1171, 1173.

The District Court's judgment of conviction and sentence is affirmed.

Affirmed.

KILEY, Circuit Judge (concurring).

I concur in the majority opinion. The facts detailed by Judge Castle leave me with no reasonable doubt that the evidence at the trial identifies the defendant as the robber of the bank.

I think, however, that the district court erred in permitting the impeachment of defendant by the use of his two prior convictions. Neither prior conviction is of the class of *crimen falsi*. In my view, judicial approval of the use of non-*crimen falsi* prior convictions for impeachment invites abuse of the process through use of the prior convictions not for the purpose of affecting a defendant's credibility, but effectually for the purpose of rebutting the presumption of innocence and insinuating into the trial the notion that a defendant is probably guilty of the offense charged because he committed the earlier offenses. I have consistently taken this position. *See* United States v. Escobedo, 430 F.2d 14, 21 (7th Cir. 1970); United States v. Gornick, 448 F.2d 566, 573–574 (7th Cir. 1971); United States v. Dow (7th Cir. 1972).

---

2. See: Advisory Committee Draft of Proposed Rules of Evidence, Rule 609, 51 F.R.D. 315, 391; United States v. Plata, 7 Cir., 361 F.2d 958, 962.

But in my view of the amplitude of the identifying testimony, I think the error is harmless.

I agree with Judge Castle that on the record before us the district court did not commit reversible error in permitting the jury to continue deliberating after midnight until 4:00 a. m. I think, however, that trial judges take the risk of committing reversible error where, except in the extraordinary case, deliberations are continued after midnight, with the probability that jurors, because of fatigue, agree to a verdict which they would otherwise not have agreed to.